596 P.2d 510

**Fryderyk FIBER, M. D.,**
**Petitioner-Appellee,**

v.

**NEW MEXICO BOARD OF MEDICAL**
**EXAMINERS, Respondent-Appellant.**

**No. 11893.**

Supreme Court of New Mexico.

June 6, 1979.

Rehearing Denied July 2, 1979.

Howard F. Houk, Albuquerque, for respondent-appellant.

Jones, Gallegos, Snead & Wertheim, J. E. Gallegos, Steven L. Tucker, Santa Fe, for petitioner-appellee.

## OPINION

JOE ANGEL, District Judge.

This is an appeal by the New Mexico Board of Medical Examiners (Board) from a decision of the District Court of Santa Fe County ordering the licensure by endorsement of Dr. Fryderyk Fiber, as provided by § 61–6–12, N.M.S.A.1978.

Dr. Fiber is a medical doctor specializing in the field of otolaryngology, the branch of medicine and surgery related to the ear, nose and throat. Born in Russia in 1941,

Dr. Fiber received a Medical Doctor's Degree in Hungary in 1965. He came to the United States in 1972, after practicing his specialty for six years, and successfully passed the examination given by the Educational Counsel for Foreign Graduates. He did research at Harvard Medical School and later was accepted as a resident at Columbia Presbyterian Hospital in New York City where he served until 1976. In that same year, he came to New Mexico where he obtained a position as Assistant Professor of Surgery in the Division of Otolaryngology with the University of New Mexico Medical School. The Board granted Dr. Fiber an institutional license authorizing him to practice medicine under the auspices of the University.

In April of 1976, Dr. Fiber applied to the Board for licensure by endorsement as provided by § 61–6–12. A hearing was held before the Board on May 17, 1977; his application was denied. Dr. Fiber filed a Petition for Review in the District Court of Santa Fe County pursuant to § 61–1–17, N.M.S.A.1978. Based on the record, briefs and arguments of counsel, the court entered its decision and judgment reversing the Board's denial of Dr. Fiber's application. The Board appeals.

Section 61–1–20, N.M.S.A.1978 controls the scope of review of administrative procedures. It states:

> Upon the review of any board decision under the Uniform Licensing Act . . *[t]he court* may affirm the decision of the board or remand the case for further proceedings; or it *may reverse the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings,* inferences, *conclusions or decisions are:* in violation of constitutional provisions; or in excess of the statutory authority or jurisdiction of the board; or made upon unlawful procedure; or affected by other error of law; or *unsupported by substantial evidence* on the entire record as submitted; *or arbitrary or capricious.* (Emphasis added.)

Section 61–6–12, which vests the Board with authority to grant a license without examination and by endorsement, provides in part:

> All applicants for licenses of the classes referred to in Section 61–6–10 NMSA 1978 shall be examined in the English language on such subjects as the board may deem necessary to test the applicant's fitness to practice medicine. *An average of 75 percent must be obtained at such examination by each applicant;* provided, that such *board may grant licenses without examination and by endorsement to those applicants* who have been regularly licensed physicians in the District of Columbia, other states and territories, *having qualifications and requirements equivalent to those required in New Mexico,* when properly endorsed . . . . (Emphasis added.)

The sole reason advanced by the Board for refusing to grant Dr. Fiber a license is that the disparity in methodology between New York and New Mexico is such as to make New York's standards not equivalent to those in New Mexico and, therefore, less restrictive.

Both states use the Federal Licensing Examination (FLEX Test) to assess the qualifications of applicants. The FLEX Test covers the areas of basic science, clinical science, and clinical competence. Grades achieved on each of these sections are tabulated separately; they are not combined to obtain an average or total score. Grades from each section are weighted according to the importance placed on the area under consideration to demonstrate medical competency. Thus, basic science is given a weight of one; clinical science is given a weight of two; and clinical competence is given a weight of three. The score on each test is multiplied respectively by 1, 2 and 3, and the figure is then divided by 6 to arrive at a final weighted score.

Both New York and New Mexico require applicants to achieve a minimum score of 75 percent. The statutes, rules and regulations of both states do not provide any disparity. The only point of disparity is

contained in the unwritten practice or custom of the Board. The Board has adopted a policy of not extending licensure by reciprocity under § 61–6–12, if the other state, which granted a medical license after requiring a FLEX Test, permitted the averaging of the highest grades attained on more than one examination to attain the 75 percent weighted average. New York's licensing authority does not impose this additional requirement upon the standard of 75 percent.

■ The question arises whether this one item of disparity makes the standards of New York and New Mexico not equivalent within the meaning of § 61–6–12. "Equivalent" is defined as being "[e]qual in value, force, measure, volume, power, and effect or having equal or corresponding import, meaning or significance; alike, identical." Black's Law Dictionary 636 (Rev. 4th ed. 1968). *See also Nahas v. Nahas,* 59 Nev. 220, 90 P.2d 223, 224 (1939).

Things may differ one from the other and still be "equivalent," if they are of equal value, significance or import, in relation to a common standard, here the promotion and preservation of standards for practicing physicians in both states.

■ Dr. Fiber took the FLEX Test in December 1974, did not achieve a weighted score of 75 percent, and retook the test in September 1975. New York's licensing authority permitted the weighted scores of sections 1 and 2 taken in 1975 to be combined with the weighted score of section 3 taken in 1974, which together gave Dr. Fiber the required score. On this basis, he was granted a license to practice medicine in New York. The Board's decision in refusing to grant Dr. Fiber a license by endorsement was based solely on the fact that New York recognized Dr. Fiber's scores on two sittings of the FLEX Test and the Board, by custom, only recognizes scores obtained at one sitting. No comparison was made by the Board of the various considerations touching the composition of the standards under inquiry. The trial court found that the Board's decision was not supported by substantial evidence and that it was arbitrary and capricious. We agree.

■ A district court may not substitute its judgment for that of the Board. The court is limited in its review to determining whether the Board's order was reasonable and supported by substantial evidence. *Seidenberg v. New Mexico Board of Medical Exam.,* 80 N.M. 135, 452 P.2d 469 (1969). The court may give special weight to the decision of the Board where the issue before the Board is essentially one of a scientific or medical nature. *McDaniel v. New Mexico Board of Medical Examiners,* 86 N.M. 447, 525 P.2d 374 (1974). However, where the facts are not in dispute and the question is a legal one, our courts will not hesitate to overrule the decision of the licensing board. *See Young v. Board of Pharmacy,* 81 N.M. 5, 462 P.2d 139 (1969).

There is no question about Dr. Fiber's medical competency. The record is replete with testimonials lauding his qualifications. Clearly, this is not a case where we are asked to permit a person of questionable merit to practice medicine in our state when those who are better able to judge his medical competency have excluded him from their ranks. Rather, we have a case of a person of proven and established medical competency, even excellence, who is being denied a license on the narrow issue of methodology disparity of two states, which disparity fails to establish that the method of one is not equivalent to the method of the other. On this point, the court found in favor of Dr. Fiber. Its finding is based on substantial evidence. We affirm. *Boone v. Boone,* 90 N.M. 466, 565 P.2d 337 (1977).

Under the facts of this case, we hold that the district court could find, as it did, that the differences in methodology of examination scoring between New York and New Mexico do not rationally relate to the "equivalency" of the qualifications and requirements as to Dr. Fiber's competency to practice medicine. The judgment of the district court is affirmed.

IT IS SO ORDERED.

SOSA, C. J., and FEDERICI, J., concur.

McMANUS, Senior Justice, and EASLEY, J., dissenting.

EASLEY, Justice, Dissenting.

Under § 61 -6- 12, N.M.S.A.1978, the Legislature has mandated that each applicant for licensure as a medical doctor by examination must attain a grade average of 75 per cent. The Board of Medical Examiners (the Board) was granted rule-making power by § 61 -6- 19, N.M.S.A.1978. The Board legally enacted a rule adopting the examination as prescribed by the Federation Licensing Examination Board (FLEX). FLEX has a rule, which was introduced by stipulation of the parties, without any question being raised by Fiber as to its existence or validity, that prohibits averaging the highest grades made on individual subjects on two examinations in order to attain the required 75 per cent, as was done in Fiber's case by New York authorities. The 75 per cent weighted average must be attained on *one* examination to meet the FLEX requirements.

The majority states that the Board was operating under an "unwritten practice or custom" in refusing to permit the averaging of grades from more than one examination to produce the required minimum grade. This is in error. The trial court also erroneously refused to find that the FLEX rules require that the grade be attained at one sitting, but Fiber does not dispute that FLEX has such a rule. We respectfully suggest that the rule of the New Mexico Board adopted the FLEX examination procedures in their entirety by reference thereto, which adoption unquestionably includes that portion prohibiting the type of action taken by the New York Board in Fiber's case.

Fiber was admitted in New York in clear violation of FLEX standards. He would not have been admitted in New Mexico if he had first taken this examination in New Mexico and had received the same grades he did in New York. To admit him is a patent violation of the law as contained in the statutes and the validly enacted rule and constitutes a classic example of transparent judicial legislation.

We are not to concern ourselves as to the wisdom of a policy that is plainly within the legislative prerogative to enact. *In re McCain,* 84 N.M. 657, 506 P.2d 1204 (1973); *Gruschus v. Bureau of Revenue,* 74 N.M. 775, 399 P.2d 105 (1965); *Petition of Sosa,* 74 N.M. 182, 392 P.2d 14 (1964); *Swallows v. City of Albuquerque,* 61 N.M. 265, 298 P.2d 945 (1956).

The main question proposed by the majority and answered in the affirmative is whether the requirements under the laws of New York and New Mexico are "equivalent" so as to permit the New Mexico Board to exercise its discretionary authority under § 61–6–12, N.M.S.A.1978, to allow Fiber to become licensed without examination. Note that the statute specifies that the "Board *may* grant licenses" (emphasis added) where the requirements are equivalent. The majority's decision here interferes with and overrules this discretion given the Board under the law.

To hold for Fiber means that we agree that the New York procedures are "equivalent" to ours. Fiber claims this means they are "equal in . . . effect". The true effect is that he is entitled to be licensed under one set of rules but is not so entitled under the other. The medical licensing requirements of the two states are unquestionably different. Fiber was admitted by the New York Board under its interpretation of the requirements of New York law. He definitely is not eligible for admission under the clear and unambiguous terms of New Mexico law. A court may disagree with a policy legally established by the Legislature, but it should not effect a change in that policy by judicial legislation.

McMANUS, Senior Judge, concurs.