This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41471**

**MARK JOHNSON,**

Plaintiff-Appellant,

v.

**PINOS ALTOS MUTUAL
DOMESTIC WATER
CONSUMERS ASSOCIATION,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY
Thomas F. Stewart, District Court Judge**

Mark Johnson
Silver City, NM

Pro Se Appellant

Lopez, Dietzel & Perkins, P.C.
William Perkins
Silver City, NM

for Appellee

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** After a bench trial, the district court ordered Defendant Pinos Altos Mutual Domestic Water Consumers Association to comply with the Open Meetings Act (OMA), NMSA 1978, §§ 10-15-1 to -4 (1974, as amended through 2013), but declined to invalidate any past action that Defendant took. It further found that in denying information that Plaintiff Mark Johnson sought under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023), Defendant

acted unreasonably, but not in bad faith. The district court concluded that Plaintiff was entitled to the requested information as well as statutory damages. Plaintiff appeals, asserting that the relief granted by the district court under the OMA was inadequate for various reasons, and that the district court erred by refusing to find that Defendant's IPRA violation was in bad faith. Unpersuaded by any of Plaintiff's arguments, we affirm.

**DISCUSSION**

**I.    The OMA**

**{2}**    In the district court, Plaintiff proposed a finding of fact that "Defendant repeatedly violated [the] OMA . . . at meetings in July, August, September and November 2019." Plaintiff asked the court to find that Defendant's violations included holding its August meeting in violation of the OMA, during which it "adopted resolutions aimed solely at silencing Plaintiff and obstructing his IPRA request," and "improperly clos[ing its] November meeting after which [Defendant] failed to minute its employee compensation decisions." Plaintiff requested that the court invalidate the "resolutions [adopted at Defendant's] August 2019 meeting" and order Defendant to hold a public meeting "to redress its actions taken at the August and November 2019 meetings" and "to describe and minute details of all employee compensation actions after June 2019." Partially persuaded, the court agreed that Defendant did not comply with the OMA, but found that "the evidence presented regarding exactly what actions were taken in violation of the [OMA] that should be overturned was unclear," and the court therefore declined to invalidate any resolution and declined to order Defendant to hold a curative meeting. The court expressly declined "to redress any alleged violations in the past" and instead ordered Defendant to comply with the OMA in the future.

**{3}**    On appeal, Plaintiff argues that (1) the court misinterpreted the OMA by placing the burden of proof on him—rather than on Defendant—to identify a specific resolution adopted in violation of the OMA; (2) in any event, he did prove as much; and (3) the court provided inadequate relief because it should have ordered Defendant to hold "a corrective special meeting" in compliance with the OMA "to remediate [Defendant's] improperly closed meetings from 2019 to the present." We address each argument in turn.

**A.    Plaintiff Bears the Burden of Proof to Establish That a Resolution was Adopted in Violation of the OMA**

**{4}**    Applying a de novo standard of review, *see Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 25, 304 P.3d 409 (reviewing de novo "[w]hether the district court [properly] allocated the burden of proof"); *Trubow v. N.M. Real Est. Comm'n*, 2022-NMCA-044, ¶ 11, 516 P.3d 224 (reviewing questions of statutory construction de novo), we conclude that the district court correctly placed the burden of proof on Plaintiff.

**{5}** The plain language of Section 10-15-3, read in the context of established law, places the burden of proof on the party seeking to invalidate a resolution based on a public body's violation of the OMA. *See Trubow*, 2022-NMCA-044, ¶ 11 ("The plain meaning rule requires a court to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous."). To successfully invalidate a resolution under the OMA, it must be shown that a "board, commission, committee or other policymaking body" took or made a "resolution, rule, regulation, ordinance or action" in violation of the OMA. Section 10-15-3(A). And critically, "[e]very resolution, rule, regulation, ordinance or action . . . shall be presumed to have been taken or made at a meeting held in accordance with the requirements" of the OMA. *Id.* This statutory text dovetails with fundamental principles that apply to civil cases generally. The "party seeking a recovery . . . has the burden of proving every essential element of the claim," UJI 13-304 NMRA, and "unless . . . provide[d] otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally." Rule 11-301 NMRA. Applying the plain meaning of the words used by our Legislature, because Plaintiff brought the claim that certain resolutions are invalid because they were adopted in violation of the OMA, Plaintiff bore the burden of proving that Defendant violated the OMA and that Defendant's resolutions were not taken in compliance with the OMA. We are not persuaded that the court misapprehended the law.

## B. Plaintiff Improperly Challenges the Court's Finding That He Did Not Establish Specific Resolutions That Were in Violation of the OMA

**{6}** Plaintiff's argument that he proved specific resolutions were adopted in violation of the OMA is, in effect, a challenge to the district court's factual finding that he failed to do so. This presents a question of substantial evidence, *see Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 22, 123 N.M. 60, 933 P.2d 859, but Plaintiff fails to properly challenge the factual finding on appeal and is therefore bound by that finding now. *See* Rule 12-318(A)(3)-(4) NMRA (outlining how to attack a finding on appeal "or the finding shall be deemed conclusive").

**{7}** Because we presume that the district court was correct, *Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701, we "will not search the record to find facts with which to overturn the [district] court's findings." *Griffin*, 1997-NMCA-012, ¶ 20. Rather, the burden rests with the appellant to establish error. *Corona*, 2014-NMCA-071, ¶ 26. To properly challenge a factual finding on appeal, the challenging party "must clearly indicate the findings that it wishes to challenge and must provide this Court with a summary of all the evidence bearing on the finding, including the evidence that supports the [district] court's determination, regardless of interpretation." *Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 28, 135 N.M. 607, 92 P.3d 53. This Court is to "view[] the evidence in the light most favorable to the finding below," and the challenging party must outline "why the . . . evidence [unfavorable to their challenge on appeal] does not amount to substantial evidence." *Id.* Failure to follow this procedure is fatal to the party's challenge, *see* Rule 12-318(A)(3)-(4), and results in the party being bound by the

finding on appeal. *See Griffin*, 1997-NMCA-012, ¶ 7 ("The [district] court's findings not properly attacked are conclusive on appeal.").

{8}    Plaintiff has not complied with this procedure. In support of his challenge, Plaintiff cites several of his exhibits—meeting minutes, agendas, and emails he wrote to Defendant—as evidence of specific violative actions. Both parties are silent as to whether this evidence is all that bore on the court's finding. Even assuming it is, Plaintiff's challenge fails. His one-sentence argument is: "In fact, Plaintiff did identify several of Defendant's specific invalid actions (i[.]e[.], holding improperly closed meetings, etc[.]) and some actions taken therein." Critically, he does not explain why all of the evidence before the court "does not amount to substantial evidence" supporting the court's finding. *Aspen Landscaping, Inc.*, 2004-NMCA-063, ¶ 28. Instead, Plaintiff focuses on how select pieces of evidence could support the opposite, but "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted). Because Plaintiff's challenge is inadequate, he is bound by the district court's finding on appeal. *See Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 18, 115 N.M. 181, 848 P.2d 1108. Therefore, the established facts on appeal are that Defendant violated the OMA, but that Plaintiff did not prove "exactly what actions were taken in violation of the [OMA] that should be overturned."

## C.    The District Court Did Not Abuse Its Discretion in Selecting a Remedy

{9}    Plaintiff argues that the remedy chosen by the district court—ordering Defendant to comply with the Act in the future—was inadequate in two ways: that the OMA requires a curative meeting because otherwise "it is impossible to know whether other violations occurred" and that a writ of mandamus is required. We are not persuaded.

{10}    We begin by expressing our disagreement with Plaintiff that the standard of review is de novo; we instead review the remedy for abuse of discretion. The OMA grants the district court jurisdiction "to enforce the purpose of the [OMA], by injunction, mandamus or other appropriate order." Section 10-15-3(C). We generally review the grant or denial of injunctions and writs of mandamus for an abuse of discretion. *See Insure N.M., LLC v. McGonigle*, 2000-NMCA-018, ¶ 7, 128 N.M. 611, 995 P.2d 1053 (reviewing the denial of an injunction for an abuse of discretion); *N.M. Found. for Open Gov't v. Corizon Health*, 2020-NMCA-014, ¶ 15, 460 P.3d 43 (reviewing the grant or denial of a writ of mandamus for an abuse of discretion). It appears from the plain language of Section 10-15-3(C) that this same standard of review applies to the other type of relief allowed by the statute. Choosing an "appropriate order" presumably involves the exercise of discretion, and Plaintiff offers no reason for us to reject that understanding of the statutory text. *See State v. Ferry*, 2018-NMSC-004, ¶ 2, 409 P.3d 918 ("Discretion is the authority of a district court to select among multiple correct outcomes.").

**{11}** Plaintiff has not established how the court abused its discretion in ordering future compliance. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. Plaintiff argues that Section 10-15-3(B) and *New Mexico State Investment Council v. Weinstein*, 2016-NMCA-069, 382 P.3d 923, require a curative meeting. We disagree. Section 10-15-3(B) requires that "[a] public meeting held to address a claimed violation of the [OMA] shall include a summary of comments made at the meeting at which the claimed violation occurred." This creates a procedural obligation *if* a public body holds a curative meeting, but it does not require a public body to hold a curative meeting. Nor does *Weinstein*, which instead gives a public body the discretion to hold a curative meeting to address past procedural defects. 2016-NMCA-069, ¶ 86 (stating that the failure to comply with the OMA "*may* be cured by taking prompt corrective action" (emphasis added) (internal quotation marks and citation omitted)).

**{12}** We also disagree with Plaintiff's argument that without a curative meeting "it is impossible to know whether other violations occurred." Plaintiff had other ways of learning of violations. The ordinary tools of discovery were available to Plaintiff, *see* Rules 1-026 to -037 NMRA, and he used them. And at trial he also had—and took—the opportunity to question witnesses under oath. Critically, Plaintiff does not explain why, even with the benefit of discovery and trial, a curative meeting was the only way to reveal violations of the OMA. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (text only) (citation omitted)).

**{13}** We decline to reach the merits of Plaintiff's next argument—that mandamus is required—for several reasons. First, we do not believe that Plaintiff preserved the argument. *See* Rule 12-321(A) NMRA. He states that he preserved it in his amended complaint filed on February 5, 2021, in his proposed findings of fact and conclusions of law, and in his motion to amend the court's order. But none of these documents include an argument that mandamus is required. We need not review unpreserved arguments. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273.

**{14}** Even if we were to ignore Plaintiff's failure to preserve this argument, we would not address it on the merits because it is inadequately developed. Writs of mandamus are "a drastic remedy," *Wallbro v. Nolte*, 2022-NMCA-027, ¶ 19, 511 P.3d 348 (text only) (citation omitted), that "shall not" be given "in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." NMSA 1978, § 44-2-5 (1884). The party requesting mandamus must prove two elements: (1) that they have "a clear legal right to the performance of the duty sought to be enforced" and (2) that the duty is "ministerial." *Wallbro*, 2022-NMCA-027, ¶ 20 (text only) (citation omitted). Because Plaintiff has not addressed either element, his argument is undeveloped, and we decline to address it further. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

**II. IPRA**

**{15}** Plaintiff requested information from Defendant about individual members' water usage and Defendant's finances. Defendant timely replied, allowing Plaintiff to access some of the financial information but withholding information pertaining to the rest of the request, stating that Defendant was a board of "volunteers, [who] are not well-versed in the law" and that it was seeking legal advice. In the meantime, it adopted a new policy that was purportedly intended to protect its members' personal information, pursuant to a federal law inapplicable to Defendant. Plaintiff renewed his request a few weeks later and asked for additional information on the same topics as before. Defendant ultimately denied the rest of Plaintiff's requests, citing its new policy and stating that some of the information required Defendant "to create a very detailed report" rather than producing a public record that already existed.

**{16}** The court found that Defendant's denial of Plaintiff's request "was unreasonable." It noted that there was "significant . . . animosity between Plaintiff and . . . Defendant's [b]oard members," and that although Defendant "may have had some level of genuine interest in protecting [its] members' privacy in an increasingly intrusive world, it is apparent to the [c]ourt that the animosity between the parties was a significant factor in Defendant's refusal to provide information to . . . Plaintiff." The court determined that "[t]he information requested appears to have been readily available to Defendant as a matter of normal business practice." It concluded that Plaintiff was entitled to the requested information and to statutory damages of $4 for each day that Defendant was out of compliance with IPRA.

**{17}** On appeal, Plaintiff takes issue with how the court handled several of his proposed findings and conclusions. Plaintiff relies on *Britton v. Office of Attorney General*, in which this Court concluded in part that a finding of "intentional, bad faith . . . mean[s] the award might be towards the higher end of the allowable range." 2019-NMCA-002, ¶ 39, 433 P.3d 320. Plaintiff proposed that the court find that "Defendant acted in bad faith by willfully violating . . . IPRA" and conclude that Plaintiff was entitled to $100 per day. After the district court declined to adopt either proposal, Plaintiff moved to amend the court's findings of fact and conclusions of law, making the same proposals a second time. The court again declined, and it refused to change the amount of its award. On appeal, Plaintiff argues that the lack of an explanation for refusing to find bad faith created a record inadequate for our review and that the court's refusal to find bad faith was not supported by substantial evidence. We are not persuaded by either argument.

**{18}** As to the first argument, we believe the record before us is sufficient for our review. When, as in this case, a bench trial is held, "the court shall enter findings of fact and conclusions of law when a party makes a timely request." Rule 1-052(A) NMRA. "Findings of fact and conclusions of law are insufficient to assist a reviewing court if they do not resolve the material issues in a meaningful way." *Montoya v. Medina*, 2009-NMCA-029, ¶ 5, 145 N.M. 690, 203 P.3d 905 (text only) (citation omitted). Here, because Plaintiff asked the district court to determine that Defendant acted in bad faith, and the "failure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative," *In re Yalkut*, 2008-NMSC-009, ¶ 18, 143 N.M. 387,

176 P.3d 1119, we understand the court to have found that even though Defendant acted unreasonably, it did not act in bad faith. Further, the district court's other factual findings provide context regarding Defendant's motivations and actions surrounding Plaintiff's request. Plaintiff presents no argument to support the notion that these findings do not meaningfully settle the material issues. *See Montoya*, 2009-NMCA-029, ¶ 5.

**{19}** Instead, Plaintiff asserts that the court was required to "enter a written statement clarifying the evidence relied upon and reasons for the decision."[1] Plaintiff relies exclusively on an unpublished opinion in which this Court applied the established principle that before a district court can determine a defendant is competent to stand trial in a criminal proceeding it must provide "a written statement clarifying the evidence relied upon and reasons for the decision." *State v. Garcia*, A-1-CA-38335, mem. op. ¶ 1 (N.M. Ct. App. May 25, 2021) (nonprecedential). *Garcia* is not binding precedent, *see* Rule 12-405(A) NMRA, and Plaintiff does not explain why the approach taken in *Garcia* should apply in the context here: a court in a civil case declining to find bad faith. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70. We are aware of no basis for concluding that the district court erred by not providing a more fulsome explanation of its reasoning.

**{20}** Turning to Plaintiff's second argument—that substantial evidence does not support the district court's determination that Defendant's violation was unreasonable rather than in bad faith—we decline to review it on its merits. Plaintiff fails to discuss all of the evidence before the court, "both favorable and unfavorable." *See Aspen Landscaping, Inc.*, 2004-NMCA-063, ¶ 28. Instead, Plaintiff selects facts and evidence that he believes support a finding of bad faith. Specifically, he highlights that the district court found that Defendant was composed of "members [who] are minimally compensated volunteers who received minimal training"; that Defendant adopted its privacy policy as "a convenient mechanism to attempt to block Plaintiff's [IPRA] request"; and that Defendant "may have had some level of genuine interest in protecting [its] members' privacy." Plaintiff concludes that "[t]hese [f]indings do not provide substantial evidence supporting the [d]istrict [c]ourt's implied conclusion of 'no bad faith.'" In its answer brief, Defendant outlines relevant evidence that Plaintiff ignored, including that Defendant thought the requested information was private, that Plaintiff's request was the first IPRA request Defendant handled, and that Defendant's members had no previous IPRA training. Accordingly, Plaintiff does not mount a proper challenge of the court's finding for substantial evidence. *See id.*

**{21}** Further, of the evidence Plaintiff does discuss, he does not explain "why the unfavorable evidence does not amount to substantial evidence" even when viewed in

---

[1]Plaintiff also implies that the record is inadequate because the district court "confound[ed] fact with conclusions of law in regard to statutory damages," and Plaintiff cites the court's determination in its findings of fact section that Defendant must pay $4 to Plaintiff for each day that Defendant was not in compliance with IPRA, pursuant to Section 14-2-11(C). Such labeling is not binding on us, see In re McCain, 1973-NMSC-023, ¶ 5, 84 N.M. 657, 506 P.2d 1204, and so we may review an order with mislabeled findings and conclusions.

the light most favorable to the finding below. *See id.* Plaintiff asserts that there was "ample evidence" that Defendant acted in bad faith: that "Defendant was aware of its duties under IPRA" as it read, but ignored, various attorney general opinions that other mutual domestic water associations were subject to IRPA; that "Defendant received legal advice which provided no legitimate support for denying Plaintiff's IRPA request"; and that Defendant shifted its defense in denying Plaintiff's request from relying on its privacy policy to arguing that it was not subject to IPRA in the first place, even though it qualified as a "political subdivision" under the Sanitary Projects Act, NMSA 1978, §§ 3-29-1 to -21 (1965, as amended through 2017). But, as Defendant demonstrates, such evidence arguably supports the court's decision. Defendant argues it was not obligated to follow the nonbinding attorney general opinions; it clarified that its legal counsel was unable to provide "a firm answer, one way or another" whether IPRA applied to Defendant; and it asserted that being a political subdivision under the Sanitary Projects Act does not automatically qualify it as a "public body" subject to IPRA. Plaintiff does not explain how this evidence—viewed in a light most favorable to the district court's decision—falls short, and we will not develop such an argument for him. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70. We therefore decline to further discuss Plaintiff's substantial evidence argument.

## CONCLUSION

{22}   We affirm.

{23}   **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**KATHERINE A. WRAY, Judge**