647 P.2d 433

Vincent J. AMATO and Sally Amato, Plaintiffs-Appellants,

v.

RATHBUN REALTY, INC. and Jean Greenwell, Defendants Third-Party Plaintiffs-Appellees,

v.

MONTOYA–PANDO REALTORS, INC. and Isabelle Caire, Third-Party Defendants.

No. 5482.

Court of Appeals of New Mexico.

June 1, 1982.

Angela J. Jewell, Harold H. Parker, Harold H. Parker, P. C., Albuquerque, for plaintiffs-appellants.

Peter H. Johnstone, Rebecca A. Houston, Keleher & McLeod, P. A., Albuquerque, for defendants third-party plaintiffs-appellees.

Arnold Melbihess, Albuquerque, for third-party defendants.

## OPINION

HENDLEY, Judge.

Defendants' motion for summary judgment was granted in plaintiffs' action for damages for loss of property as a result of negligent misrepresentation, and negligent and fraudulent failure to disclose information. Plaintiffs appeal. We reverse in part and remand.

The following facts are undisputed. In 1976, plaintiffs contacted defendants for assistance in procuring income producing property. Plaintiffs and defendants had dealt with each other in property matters prior to the transaction in question. Plaintiffs had specifically dealt with Ms. Rathbun, a broker at Rathbun Realty. After considering several pieces of property in May of 1976, plaintiffs chose to buy an apartment complex at 904 Third Street, S.W., in Albuquerque, with Ms. Rathbun acting as broker. Plaintiffs were informed that the property needed only cosmetic repairs in order to become income producing. The source of this information is a disputed fact. Shortly after the closing of the sale, the property was condemned, closed down, and the buildings were destroyed.

Plaintiffs present three issues on appeal: 1) defendants are not entitled to summary judgment as a matter of law; 2) there is a material issue of fact whether defendants knew or should have known the condition of the property; and 3) there is a material issue of fact whether defendants made independent representations to plaintiffs concerning the condition of the property.

*Summary Judgment as a Matter of Law*

We first decide whether there is a duty on the part of a broker to educate himself on the condition of property for which he intends to arrange a sale. Defendants contend that New Mexico case law has already defined that duty, and a broker may only be held liable for *actual* knowledge withheld from a party. *See, e.g., Snell v. Cornehl*, 81 N.M. 248, 466 P.2d 94 (1970); *Neff v. Bud Lewis Company*, 89 N.M. 145, 548 P.2d 107 (Ct.App.1976). Defendants would only place a duty of disclosure on brokers if they have actual knowledge of a defect with the property, no matter how obvious the problem may be. We disagree.

■ A broker is a fiduciary, in a position of great trust and confidence, and must exercise the utmost good faith. *Iriart v. Johnson*, 75 N.M. 745, 411 P.2d 226 (1965). In *Maxey v. Quintana*, 84 N.M. 38, 499 P.2d 356 (Ct.App.1972), this Court reversed a summary judgment which had been granted in favor of a broker who allegedly made false representations to his principal. The Court held that negligent misrepresentation is a tort determined by general principles of the law of negligence. In *Stotlar v. Hester*, 92 N.M. 26, 582 P.2d 403 (Ct.App.1978), this Court further held that 3 Restatement of Torts (Second) § 552 (1977) defines negligent misrepresentation in New Mexico. The relevant subsection of § 552 reads as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise *reasonable care or competence in obtaining or communicating the information.* (Emphasis added.)

The comments following this section make it clear that a broker's duty is not limited to failure to convey information within his actual knowledge. In Comment "a" a distinction is made between liability for intentional deception and negligence coupled with good faith. The section speaks to the latter.

■ Another factor leading us to the conclusion that a broker has the duty to exercise reasonable care or competence in obtaining or communicating information is that they are a licensed, regulated group. *See*, Real Estate Brokers and Salesmen Act, § 61–29–1, *et seq.*, N.M.S.A.1978. The purposes of these statutes are to regulate and, thus, protect the public against abuses which can occur within the real estate business. These purposes are well within the

traditional police powers. *See, Pharmaceutical Mfrs. Ass'n v. New Mexico Bd. of Ph.*, 86 N.M. 571, 525 P.2d 931 (Ct.App.1974), and cases cited therein.

The Real Estate Brokers and Salesmen Act provides a thorough and extensive scheme of regulation. The Act sets forth, with exactness, the necessary qualification for a license (§ 61–29–9), what information the application for a license must contain (§ 61–29–10), why a license may be refused, suspended, or revoked (§ 61–29–12), provisions for hearings before suspension or revocation of the license (§ 61–29–13), and civil and criminal penalties for its violations (§§ 61–29–16 and 61–29–17).

The Act also provides that its requirements are in addition to the existing or future requirements of a city or village taxing, licensing, or regulating real estate brokers. This provision was undoubtedly included so as to provide those communities with a means to regulate any problem which would be unique.

■ Thus, we hold that it is incumbent upon the broker to have a general knowledge of the building code and the zoning ordinances which deal with the particular property being offered for sale or which is being purchased. We do not hold that this knowledge in any way relates to hidden or latent defects.

### Breach of the Duty

Once the existence of a duty is established, this Court must decide whether defendants made a prima facie case that there is no material issue of fact whether they breached their duty, i.e. whether they failed to properly advise plaintiffs of the condition of the property.

It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. The question is one for the jury, unless the facts are so clear as to permit only one conclusion.

Restatement, § 552, *supra*, Comment "e".

■ Defendants did not present facts that only one conclusion is possible. The movant, in this case defendants, has the burden of showing there is an absence of a genuine issue of material fact. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). The only evidence presented by defendants outside the pleadings was an affidavit of Ms. Rathbun. Paragraph 3 of that affidavit states:

That she did not have *nor did she acquire* any knowledge concerning the real property which is the subject matter of the Complaint except for such information she received from representatives of Montoya-Pando Real Estate Company [broker representing the seller] or from the multiple listing service advertisement concerning the subject property. (Emphasis added.)

This is not enough to make a prima facie showing that no issue of fact exists as to whether Ms. Rathbun was negligent. Without an affidavit or other testimony of a qualified expert stating that Ms. Rathbun did not breach the standard of care of brokers in the community, no prima facie showing was made. *See, Lay v. Vip's Big Boy Restaurant, Inc.*, 89 N.M. 155, 548 P.2d 117 (Ct.App.1976).

### Independent Representations

Defendants contend it is undisputed that they did not make any *independent* representations to plaintiffs; all representations were made by the seller or the seller's broker. Without deciding whether it is a breach of a broker's duty to allow a client to rely on the misrepresentations of a seller, we hold there is a material issue of fact whether Ms. Rathbun made independent representations to plaintiffs. Although Ms. Rathbun's affidavit denies making independent representations, the deposition of plaintiff states otherwise. In referring to a visit to the property with Ms. Rathbun only, plaintiff answers as follows:

Q. I'm still talking about your first inspection. What did you suspect had to be done?

A. I didn't know.

Q. Well, you've just stated that it didn't look too good. I'm trying to find out what you recall particularly didn't look too good to you?

A. Well the porch. There was like a porch on the front. The paint job on the outside. I saw some broken windows, and I assume it needed a lot more work than just a cosmetic job.

Q. Did you have any particular suspicion as to what might have to be done apart from cosmetic work?

A. No, because I didn't know the codes down here.

Q. Did Mrs. Rathbun at that time, at that first visit, make any representations to you about what she thought had to be done, from her—

A. Cosmetics, face-lifting.

Q. By cosmetics and face-lift, you mean a paint job?

A. Paint job, a couple of windows, a few panels of wood. I was told there was a fire alarm system and all the electrical system was in good working order.

Q. Who told you that?

A. Mrs. Rathbun.

In discussing telephone conversations after the first visit, plaintiff testified:

Q. In the interim, did you have any conversations with anyone concerning that property?

A. Just Rathbun. I was curious as to how much work had to be done, because I told her I didn't think that just a cosmetic job might work there.

Q. Is this the same day, or is this a series of conversations?

A. Probably a series of conversations.

Q. What do you recall her telling you about the property?

A. That it could be a big money maker, and fixing it up cosmeticly [sic] would work, for income.

The above testimony, coupled with Ms. Rathbun's affidavit, creates an issue of fact whether Ms. Rathbun made independent representations to plaintiffs of the condition of the property.

*Actual Knowledge*

 The trial court also granted summary judgment on the issue of whether defendants had actual knowledge of the condition of the property. We affirm that part of the summary judgment.

Defendants' answer denies actual knowledge of the condition of the property. Plaintiff's deposition testimony states that "she [Ms. Rathbun] might not have known [the condition of the property]." This "might not have known" language is only plaintiff's statement of opinion or belief, which is not enough to create a material issue of fact. *Martinez v. Metzgar*, 97 N.M. 173, 637 P.2d 1228 (1981).

We reverse the summary judgment on all issues except actual knowledge and remand to the trial court for proceedings consistent with this opinion.

IT IS SO ORDERED.

DONNELLY and NEAL, JJ., concur.